IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DONALD M. NELSON, Y22251,                )
                                          )
            Plaintiff,                    )
                                          )
vs.                                       )          Case No. 26-cv-90-DWD
                                          )
S. PADAVIC,                               )
C/O REID,                                 )
C/O DUNBAR,                               )
LT. DALLAS,                               )
IDOC,                                     )
                                          )
            Defendants.                   )

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Donald Nelson, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Lawrence Correctional Center, brings this civil rights action under 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center. Specifically, Plaintiff alleges that the defendants used excessive force against him in September of 2024 without cause and allowed other inmates to attack him. The Complaint (Doc. 1) is now before the Court for preliminary review under 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture,

the factual allegations of the *pro se* complaint are to be liberally construed. Rodriguez v.

Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009).

Plaintiff also filed three motions to amend, which the Court will dispose of below.

(Docs. 13, 14, 17).

### THE COMPLAINT

On September 12, 2024, Plaintiff alleges that Defendant Dunbar approached

Plaintiff's cell and told him to "get in cuffs." (Doc. 1 at 5). Plaintiff complied, and Dunbar

led him to the showers, where Defendant Reid held the door for them to enter. (*Id.*)

Dunbar placed Plaintiff in a dark shower with another inmate—Mario—who was ready

to hit Plaintiff on the head with the showerhead. (*Id.*) Mario repeatedly beat Plaintiff,

and Dunbar slammed Plaintiff down when he tried to exit the shower. (*Id.*) A second

inmate—Maritz Fields—showed up during the altercation and punched Plaintiff in the

face multiple times while Mario held him in a chokehold. (*Id.* at 5-6). During the attack,

Dunbar stated, "'This is what you get for writing Ms. P (Padavic).'" (*Id.* at 5).

Once the attack ended, Fields told Plaintiff not to send any kites concerning him,

Mario, and another inmate named "Trigger." (Doc. 1 at 6). Plaintiff then exited the

shower and saw the whole prison staff on shift at that time smiling and laughing at him,

including Reid. (*Id.*) Dunbar gave Plaintiff a rag to wipe the blood off his face. (*Id.*)

Several minutes later, Plaintiff returned to his cell. (*Id.*) During the next shift change,

Officer Roberts visited Plaintiff's cell, where Plaintiff was still washing the blood out of

his clothes. (*Id.*) Roberts called a lieutenant so that Plaintiff could be taken to the medical

department. (*Id.*)  Although Plaintiff was afraid to go to the medical department, he ultimately went. (*Id.*)

When Plaintiff arrived at the medical department, Defendant Dallas came to take pictures of Plaintiff and question him about the beating. (Doc. 1 at 6).  Later, Plaintiff learned that Dallas was the lieutenant in the building during the beating orchestrated by the staff on shift. (*Id.*)

On the same day as the attack, Plaintiff was sent to Chester Hospital for x-rays and an examination. (Doc. 1 at 7).  There, Dr. Havel examined Plaintiff to see if Mario and Fields—known sex offenders—had sexually assaulted him. (*Id.*)  Dr. Havel discovered that Plaintiff had lymphoma on his forehead, a fractured nose, and an object behind his right orbital. (*Id.*)  Plaintiff alleges he was sent to a second hospital in St. Louis, Missouri before being returned to Menard. (*Id.*)

Back at Menard, a nurse took Plaintiff's medical records and did not return them. (Doc. 1 at 7).  An unnamed officer interviewed Plaintiff and his cellmate about Mario. (*Id.*)  During the interview, Plaintiff was threatened with being placed in a segregated cell, but he was ultimately transferred to Lawrence. (*Id.*)  Plaintiff had one surgery on August 27, 2025, for the injuries he sustained in the attack on September 12, 2024, but he alleges he missed his follow-up surgery. (*Id.*)

Plaintiff attaches a twenty-page exhibit to his Complaint. (Doc. 1-1). Plaintiff's allegations in this exhibit meander and span from 2024 to 2026, discussing numerous discrete issues such as transfers, time in segregated housing units, and the loss of his personal property.  For example, Plaintiff alleges that for four days in September of 2025

he was housed in a cell at Menard without a mattress. (*Id.* at 1). At the time he had fresh stitches in his arm from surgery related to a prior beating, and he did not receive pain killers. (*Id.*) In later pages of the document, he alleges that on May 27, 2025, he was sexually assaulted by a guard, but when he reported it he was then maced and placed in crisis watch to cover up the situation. (*Id.* at 7). Additionally, he alleges that in 2021 he was found guilty but mentally ill, and also not guilty by reason of insanity. (*Id.* at 17). He alleges that based on these findings he should be attending mental health groups, but he has not been given the chance to attend those groups, which he suspects is related to the fact that the victim of his crime was a politician. (*Id.*) These are just a few examples of the many discrete allegations set forth in Plaintiff's twenty-page attachment to the Complaint.

In a second exhibit Plaintiff alleges that Reid also "orchestrated" the attack on September 12, 2024, because Plaintiff reported Reid for allowing several inmates— including Mario and Fields—to steal his electronics. (Doc. 5 at 1). Plaintiff adds that Dunbar and Padavic also played a part in Plaintiff being attacked. (*Id.*) In this exhibit, Plaintiff also provides facts concerning his state-court criminal appeal, which is unrelated to the claims in the Complaint and will be disposed of below when the Court addresses Plaintiff's motions to amend. (*Id.*)

### PRELIMINARY DISMISSALS

Plaintiff sues Defendant Padavic, but he only mentions her in the caption of the Complaint and when Dunbar references her while attacking Plaintiff in the shower. (*See* Doc. 1 at 1, 5). He also states in a conclusory manner in the exhibit that Padavic

participated in the attack.  (Doc. 5 at 1).  Plaintiff's conclusory allegations against Padavic are not enough to show that she knew of the attack in the shower, let alone participated in it. Section 1983 liability hinges on personal participation or involvement in a constitutional deprivation.  *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). The mere fact that Dunbar mentions Plaintiff having written Padavic during the shower attack is not enough to establish liability against her.  Accordingly, Plaintiff's claims are dismissed without prejudice against Padavic.

Plaintiff also fails to state a claim against Defendant Dallas. In the Complaint, Plaintiff alleges that Dallas was the lieutenant in charge when the prison staff orchestrated the shower beating. (Doc. 1 at 6). The mere fact that Dallas was in a supervisory position is insufficient to establish liability against him. The doctrine of *respondeat superior* does not apply to actions filed under § 1983.  *Smith v. Gomez*, 550 F.3d 613, 616 (7th Cir. 2008).  Therefore, Plaintiff's claims are dismissed without prejudice against Dallas.

Plaintiff also sues the IDOC.  (Doc. 1 at 1).  Any claims against the IDOC are not viable. First, Plaintiff only lists the IDOC as a Defendant in the caption of the Complaint. *See* Fed. R. Civ. P. 8(a)(2); *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). Second, the IDOC, as a state agency, is not a "person" that may be sued under § 1983.  *Thomas v. Ill.*, 697 F.3d 612, 613 (7th Cir. 2012) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989).  Accordingly, the IDOC must be dismissed with prejudice because it may not be sued under § 1983.

Finally, the Court will not incorporate the exhibit (Doc. 1-1) Plaintiff provides into the original Complaint. Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 8(d), "each allegation must be simple, concise, and direct." Federal Rule of Civil Procedure 18 provides that a party may assert as many claims as they have against a single party. Alternatively, a plaintiff may join multiple claims against defendants if the claims arise out of the same transaction, occurrence, or series of transactions or occurrences, or if there is a question of law or fact that will be common to all defendants. FED. R. CIV. P. 20. The Seventh Circuit has cautioned that courts should guard against "scattershot" pleading strategies, and that they should "target for dismissal 'omnibus' complaints—often brought by repeat players—that raise claims about unrelated conduct against unrelated defendants." Mitchell v. Kallas, 895 F.3d 492, 503 (7th Cir. 2018).

This exhibit (Doc. 1-1) violates Federal Rules of Civil Procedure 8, 18, and 20 because most of the allegations plainly do not relate to the body text of the Complaint (Doc. 1 at 5-7) concerning the shower incident on September 12, 2024. Though the Court read the entire twenty pages of allegations, it did not recite them exhaustively in the fact section above. The few examples given above demonstrate that the twenty pages of excess material present unrelated claims. The allegations discuss different legal theories, different individuals than those named as defendants, and many different dates. The Court takes no stance on the potential legal merit of any issues identified in the exhibit, and any such claims are dismissed without prejudice. Plaintiff should be aware that if he

would like to pursue any of these unique incidents further, he would need to do so by filing a separate case, and he should remain cognizant that claims under § 1983 are generally subject to a two-year statute of limitations.

## DISCUSSION

Based on the allegations in the Complaint the Court designates the following Claims:

> **Claim 1:** **Eighth Amendment excessive force claim against Defendants Dunbar and Reid for the beating in the shower on September 12, 2024;**
>
> **Claim 2:** **Eighth Amendment failure to protect claim against Defendants Dunbar and Reid for the shower attack that involved inmates Mario and Fields on September 12, 2024;**
>
> **Claim 3:** **First Amendment retaliation claim against Defendants Dunbar and Reid for attacking Plaintiff in the shower for reporting various prison officials.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See* *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## CLAIM 1

An Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S.

1, 7 (1992). The "core judicial inquiry" for an excessive force claim is not the severity of the injury, but whether the force used was "malicious and sadistic." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Plaintiff's allegations in Claim 1 are sufficient to proceed against Defendant Dunbar. According to Plaintiff, Dunbar participated in the shower ambush when he slammed Plaintiff down while Plaintiff tried to exit the shower. This description of events suggests Dunbar's use of force was done without penological justification, as he stated, "'This is what you get for writing Ms. P (Padavic).'"

Plaintiff, however, fails to state an excessive force claim against Reid. The Complaint implies that Reid knew about the attack because he let Dunbar and Plaintiff enter the shower and smiled and laughed as Plaintiff exited the shower after the attack. But these allegations are insufficient to state an excessive force claim against Reid on screening because Reid did not use any force against Plaintiff during the shower attack.

Therefore, Claim 1 will proceed against Dunbar but is dismissed without prejudice as to Reid.

## CLAIM 2

To establish a failure to protect claim under the Eighth Amendment, a plaintiff must allege "(1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). But "prisons are dangerous places.

Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). A failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Negligence is not enough to support a deliberate indifference claim. *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021).

A plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). A general risk of harm is not sufficient, an inmate must demonstrate that he alerted staff to a specific risk. *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008).

A prison employee may be liable for failing to intervene in an inmate-on-inmate attack if he or she is aware of an assault but fails to take reasonable action to intervene. *Eddmonds v. Walker*, 317 Fed. App'x 556, 558-59 (7th Cir. 2009). An inmate must establish more than just negligence, he must show that prison officials were aware of a substantial risk of serious injury but failed to take appropriate steps to respond. *Id.* at 558. A guard is not expected to immediately insert themselves into a physical altercation, risking their own safety, but they must at least take reasonable action. *See, e.g.*, *Giles v. Tobeck*, 895 F.3d 510, 514 (7th Cir. 2018) (finding that even if a guard's reaction to a fight was not the inmate's preferred action, her unsuccessful attempt to direct the assailant to return to his cell was negligence at most); *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007).

Plaintiff states enough in the Complaint to proceed at this early juncture against Dunbar and Reid for their alleged failure to protect him or their failure to intervene during the assault by his fellow inmates.  Plaintiff's allegations make clear that Dunbar both observed and participated in the incident where Plaintiff's fellow inmates attacked him.  Finally, Plaintiff states enough against Reid because he strongly implies that Reid knew about the attack when he let Plaintiff and Dunbar in the shower where Mario was waiting to attack Plaintiff.  Therefore, this claim will proceed against Dunbar and Reid.

### CLAIM 3

A successful claim for First Amendment retaliation requires that a plaintiff show, "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action."  *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).  An inmate may meet the *prima facie* showing by offering direct or circumstantial evidence that the defendant's actions were motivated by retaliation.  *See e.g.*, *Kidwell v. Eisenhauer*, 679 F.3d 957, 965-66 (7th Cir. 2012).  "Circumstantial evidence, however, is evidence from which a trier of fact may infer that retaliation occurred.  'Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other [individuals] in the protected group.'" *Id.*

The Court dismisses this claim without prejudice, as Plaintiff fails to state a colorable retaliation claim against Reid and Dunbar.  First, the only allegation against

Reid arises out of Plaintiff's second exhibit, which claims that Reid orchestrated the shower attack in September of 2024, because Plaintiff reported him for allowing the theft of Plaintiff's electronics the previous June.  (Doc. 5 at 1).  Critically, there are no allegations in the Complaint that Reid retaliated against Plaintiff.  (*See generally* Doc. 1).  Therefore, the Court will not allow piecemeal amendment to the Complaint through Plaintiff's exhibits.  In addition, the allegation that Reid retaliated against Plaintiff several months after Plaintiff reported him for the stolen electronics is conclusory and speculative. Plaintiff merely states that Reid "orchestrated" the shower attack after Plaintiff reported him in June.  And speculation based on suspicious timing alone does not support a reasonable inference of retaliation.  *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 883 (7th Cir. 2014).  Therefore, the Court dismisses Defendant Reid from this claim without prejudice.

Second, the allegations against Dunbar are too vague to support a retaliation claim. In the Complaint, Plaintiff alleges that during the shower attack, Dunbar stated, "'This is what you get for writing Ms. P (Padavic).'"  While this implies that Plaintiff wrote something about or to Padavic, Plaintiff does not clarify what he wrote.  Because Plaintiff's retaliation claim against Dunbar rests on a single comment, and Plaintiff does not actually state he engaged in protected activity in relation to Padavic, the Court dismisses this claim against Dunbar without prejudice.  *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 406 (1992) (White, J. concurring) (stating, "the First Amendment does not apply to categories of unprotected speech").

**MOTIONS TO AMEND (DOCS. 13, 14, 17)**

Plaintiff filed three motions seeking to amend or correct his Complaint. (Docs. 13, 14, 17). In his first motion, Plaintiff requests to reopen another case that was closed in this Court: *Nelson v. Rose*, 3:19-cv-667-NJR. (Doc. 13 at 1). It appears he filed the exact motion in the *Rose* case, which the Court denied. *See Nelson v. Rose*, 3:19-cv-667-NJR at Docs. 7, 8. The first motion contains allegations that Plaintiff was removed from a halfway house because of his race, and a worker there owed him money. (Doc. 13 at 1). The second motion contains allegations concerning Plaintiff's state-court criminal appeal. (Doc. 14); (Doc. 5). In that motion, Plaintiff states that his appellate public defender failed to explain the process of his appeal, even though the public defender promised to send another lawyer to help Plaintiff. (*Id.* at 1). Without the help of a lawyer, Plaintiff appears to have defaulted on his appeal because he missed a filing deadline. (*Id.*) Finally, in the third motion, Plaintiff alleges that he was ordered by Judge Napp of Madison County Court to participate in mental health groups. (Doc. 17 at 1). While unclear from the motion, it appears Plaintiff contends that his mental illness was used as a pretext to restrain him for the attack on September 12, 2024. (*Id.*) Plaintiff also claims that he was transferred from Lawrence because he filed grievances against a prison counselor, Ms. Fitzgerald. (*Id.*)

As Plaintiff alleges in the Complaint, his claims concern the shower attack that occurred at Menard on September 12, 2024. (*See generally* Doc. 1). A reading of the motions to amend shows that the claims Plaintiff attempts to raise in them are plainly unrelated to those in the Complaint, and the Court will not allow Plaintiff to amend through motions. (*Compare* Doc. 1 *with* Docs. 13, 14). The motions to amend, like any

amended complaint, "would supersede[] and replace[] the original Complaint.  As such, an Amended Complaint must stand on its own without reference to any other pleading." *See Purnell v. Ill Dep't of Corr.*, 2020 WL 5038589, at *1 (S.D. Ill. Aug. 26, 2020) (citing *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004)).  The Court will not allow a piecemeal amendment of the Complaint in this action. *See Spreck v. U.S. Veterans Admin.*, 67 F. App'x 963, 964 (7th Cir. 2003) (stating a court is "not required to incorporate [a plaintiff's] revised caption into an earlier submitted complaint and accept the complaint piecemeal").  Therefore, the Court denies the motions to amend (Docs. 13, 14, 17) without prejudice.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Complaint (Doc. 1) survive screening.  **Claims 1 and 2** shall proceed against Defendant Dunbar, while **Claim 2** will proceed against Reid.  Defendant Reid is dismissed without prejudice from **Claim 1**.  And the Court dismisses **Claim 3** without prejudice.  The Clerk of Court shall **TERMINATE** Defendants IDOC, Dallas, and Padavic for Plaintiff's failure to state a sufficient claim against them.

The Clerk of Court is **DIRECTED** to prepare for Defendants Dunbar and Reid: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were

sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendants' current work address, or, if not known, the Defendants' last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. Fed. R. Civ. P. 41(b).

Plaintiff's motions to amend (Docs. 13, 14, 17) are **DENIED** without prejudice.

**IT IS SO ORDERED.**

**DATED:** May 7, 2026

/s *David W. Dugan*

———————————————

DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.